1  **MARTIN D. SINGER (SBN 78166)**
**MICHAEL E. WEINSTEN (SBN 155680)**
2  **DANIEL R. GUTENPLAN (SBN 260412)**
**LAVELY & SINGER**
3  **PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
4  Los Angeles, California 90067-2906
Telephone: (310) 556-3501
5  Facsimile: (310) 556-3615
E-mail:   mdsinger@lavelysinger.com
6           mweinsten@lavelysinger.com
            dgutenplan@lavelysinger.com
7
8  Attorneys for Defendant
JOHN TRAVOLTA
9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| FABIAN ZANZI, an individual, | CASE NO. CV 12-5393 SVW-AJW |
| Plaintiff, | [Hon. Stephen V. Wilson, Courtroom 6] |
| vs. | |
| JOHN TRAVOLTA, an individual, | **DEFENDANT JOHN TRAVOLTA'S NOTICE OF MOTION AND MOTION FOR AN ORDER REQUIRING PLAINTIFF FABIAN ZANZI TO FILE AN UNDERTAKING TO SECURE AN AWARD OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendants. | |
| | [Declarations of John Travolta, Lorena Alvarez, Michael Rasmussen, Espen Been, Michael E. Weinsten Filed Concurrently Herewith] |
| | Date:        January 28, 2013
Time:        1:30 p.m.
Courtroom: 6 |
| | Complaint Filed: June 21, 2012
Trial Date:         April 30, 2012 |

1

2:12-cv-5393-SVW                                    **MOTION FOR UNDERTAKING**

**TO THIS HONORABLE COURT AND TO PLAINTIFF AND HIS ATTORNEYS:**

**PLEASE TAKE NOTICE** that on January 28, 2013, or as soon thereafter as counsel may be heard in Courtroom 6 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90013, Defendant John Travolta ("Travolta") will and hereby does move this Court for an Order requiring Plaintiff Fabian Zanzi ("Zanzi") to file an undertaking in the amount of $75,000 to secure an award of costs to Travolta.

This Motion is made on the grounds Zanzi is a resident of Chile, and under California Code of Civil Procedure § 1030, which this Court should apply, Travolta may compel Zanzi, an out-of-state plaintiff, to file an undertaking to secure an award of costs and attorney's fees upon showing a reasonable possibility that he will defeat plaintiff's claims. Travolta can easily satisfy the liberal "reasonable possibility" standard, as Zanzi's claims are predicated on a blatantly false recitation of the alleged underlying events and plainly contradicted by Zanzi's own post-incident statements. Moreover, given the amplified costs caused by the international nature of this action, which will require Travolta's counsel to travel to at least three foreign countries to conduct depositions, Travolta's request for an undertaking is even more appropriate.

///
///
///
///
///
///
///
///

1    This Motion is made following the conference of counsel pursuant to L.R. 7-3
2 which took place on or about December 7, 2012. This Motion is based upon this
3 Notice of Motion and Motion, the attached Memorandum of Points and Authorities,
4 the accompanying Declarations of John Travolta, Lorena Alvarez, Michael
5 Rasmussen, Espen Been and Michael E. Weinsten and attached exhibits, all records,
6 pleadings and papers on file herein, and upon such further oral argument and/or
7 documentary evidence as may be presented prior to or at the hearing on this Motion.

DATED: December 26, 2012

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
MICHAEL E. WEINSTEN
DANIEL R. GUTENPLAN


By: _____/s/_____
    MARTIN D. SINGER
Attorneys for Defendant
JOHN TRAVOLTA

# TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Zanzi's Allegations In The Complaint.. . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Zanzi's Allegations In The Complaint Are Entirely
        False and Contradict His Post-Incident Verbal Account
        Of The Encounter To His Superiors, As Well As His Prior
        Sworn, Written Statement Following The Encounter.. . . . . . . . . . . 4

III. LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.   The Court Has Authority To Require Zanzi To File
        An Undertaking.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.   Plaintiff Zanzi Is A Foreign Resident.. . . . . . . . . . . . . . . . . . . . . . 10

    C.   Travolta Can Easily Satisfy The Liberal
        "Reasonable Possibility" Standard.. . . . . . . . . . . . . . . . . . . . . . . . 10

    D.   The Undertaking Should Be In The Amount Of
        At Least $75,000.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

...

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Gabriel Tech. Corp. v. Qualcomm, Inc.*,
   2010 WL 3718848 at *5 (S.D. Cal. 2010) . . . . . . . . . . . . . . . . . 9, 10

*Kourtis v. Cameron*,
   2009 WL 4885054 at *1 (9th Cir. 2009) . . . . . . . . . . . . . . . . . 9-11

*Plata v. Darbun Enterprises, Inc.*,
   2009 WL 975233 at *33 (S.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . 8

*Simulnet East Assoc. v. Ramada Hotel Operating Co.*,
   37 F.3d 573 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATE CASES**

*Ashafie v. Lallande*,
   171 Cal. App. 4th 421 (2009) . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Shannon v. Sims Serv. Center*,
   164 Cal. App. 3d 907 (1985) . . . . . . . . . . . . . . . . . . . . . . . 9, 11

**STATUTES**

California Code of Civil Procedure § 1030 . . . . . . . . . . . . . . . . . . . 2, 8-11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This action represents nothing more than yet another frivolous, attorney-driven action aiming to exploit a person's celebrity status and extort a quick and easy payday. Through his Complaint, Plaintiff Fabian Zanzi's ("Zanzi") attempts to rewrite history by advancing a spurious account of a June 2009 encounter with Defendant John Travolta ("Travolta"), which allegedly occurred while Travolta was traveling on the Royal Carribean Cruise Ltd. ("RCCL") cruise ship MS Enchantment of the Seas (the "Ship"). Zanzi was a room service attendant on the Ship.[1]

Travolta vehemently denies Zanzi's baseless allegations, and as the overwhelming evidence establishes, Zanzi's unfounded account of his encounter with Travolta is replete with falsities and misrepresentations. Most importantly, at the time of his alleged encounter with Travolta, Zanzi reported a very different story to his superiors – one which involved no sexual conduct at all and in which Zanzi himself had violated company regulations. Zanzi also failed to mention anything regarding the purported sexual conduct on which he bases this action, either verbally to his superiors or in the written Security Incident Report (the "Report") he completed following the alleged incident.

If Zanzi wishes to proceed with this meritless lawsuit, the Court should force him to file an undertaking as security for the exorbitant costs Travolta will likely be awarded as the prevailing party. This Court is vested with the inherent authority to impose a cost bond on Zanzi, a foreign national residing in Chile. While the Federal Rules of Civil Procedure do not contain a specific provision governing

---

[1] It is also significant that Zanzi waited two years and 11 months from the date of the alleged encounter with Travolta to assert his claim and three years to file this action against Travolta. Declaration of Michael E. Weinsten ("Weinsten Decl."), ¶ 2.

security for costs, federal courts routinely apply state law in ordering a plaintiff to post an undertaking.

Under state law, specifically California Code of Civil Procedure § 1030, a defendant may compel an out-of-state plaintiff to file an undertaking to secure an award of costs and attorney's fees upon showing a *reasonable possibility* that he will defeat plaintiff's claims. Here, Travolta can easily satisfy the liberal "reasonable possibility" standard. Indeed, Zanzi's Complaint is contradicted by his own verbal and written statements made after the events allegedly occurred.

Moreover, because this action took place aboard a RCCL cruise ship, the crew members and other percipient witnesses reside in various countries around the world, creating a logistical nightmare in conducting discovery. By way of illustration, if Travolta is forced to depose just the three crew members Zanzi mentions by name in the Complaint, counsel for Travolta will have to travel to Argentina, Norway and possibly Australia. In addition, Zanzi has identified several witnesses in Chile who may have to be deposed. Accordingly, the Court should order Zanzi to file an undertaking in an amount no less than $75,000 as security for the exorbitant costs that Travolta will incur if he is forced to defend against this frivolous action.

## II.

## FACTUAL BACKGROUND

### A. Zanzi's Allegations In The Complaint

Zanzi asserts three causes of action in his Complaint, specifically: (1) Assault and Battery; (2) Intentional Infliction of Emotional Distress; and (3) Negligent Infliction of Emotional Distress. Zanzi's claims arise from alleged events that took place in June 2009 on the Ship, aboard which Zanzi worked as a room service attendant. Travolta was a passenger traveling on the Ship, and Zanzi was assigned as Travolta's personal attendant for the duration of the voyage. Complaint, ¶¶ 2-3.

According to the Complaint, on or about June 9, 2009, Zanzi delivered a room service meal order to Mr. Travolta's room, at which point Mr. Travolta was accompanied by two other males. Complaint, ¶ 4. Zanzi alleges that Travolta then placed an additional food order and that Zanzi returned approximately twenty minutes later with the additional meal order, at which point Travolta was alone in his room. Complaint, ¶¶ 5-6.

Zanzi claims that upon delivering the meal, Travolta asked Zanzi to remain in his room. Zanzi alleges that after speaking for a few minutes, Travolta requested that Zanzi move some clothes from one area in the room to another. Complaint, ¶ 8. According to Zanzi, while he was in the process of moving the clothes, Travolta approached him and requested a neck massage. Complaint, ¶ 9. As Zanzi reached for Travolta's neck to give him a massage, Travolta allegedly disrobed and exposed himself to Zanzi. Complaint, ¶¶ 11-12. Zanzi claims that Travolta then embraced Zanzi and maintained a hard grasp on Zanzi's hands before eventually letting go. Complaint, ¶ 14.

Following the purported embrace, Zanzi alleges that Travolta asked Zanzi to remain silent about the incident, offering Zanzi the sum of $12,000 in exchange for his silence. Complaint, ¶¶ 16-17. Zanzi alleges that he left Mr. Travolta's room without accepting the $12,000 and immediately reported the incident to his superiors. Complaint, ¶¶ 17-18. Zanzi claims that he personally met with RCCL Human Resources Manager Lorena Alvarez ("Alvarez"), RCCL's Hotel Director Michael Rasmussen ("Rasmussen"), and RCCL's Staff Captain Espen Been ("Been"). Complaint, ¶ 19.

According to Zanzi, Alvarez asked Zanzi to fill out "paperwork" regarding the incident, which he did. Complaint, ¶ 20. Zanzi claims that he was then sequestered for five (5) days, and starting in or about July 2009, he began seeking treatment for injuries he supposedly suffered as a result of the alleged incident with

Travolta. Complaint, ¶¶ 22-24. Zanzi further alleges that he is still seeking treatment for these purported injuries to this day. Complaint, ¶ 24.

    **B.**     **Zanzi's Allegations In The Complaint Are Entirely False and Contradict His Post-Incident Verbal Account Of The Encounter To His Superiors, As Well As His Prior Sworn, Written Statement Following The Encounter.**

Travolta vehemently denies Zanzi's allegations, as Travolta and Zanzi did not have any notable interaction aboard the Ship. Declaration of John Travolta, ¶¶ 2-3. However, setting aside the sheer falsity of Zanzi's allegations, Zanzi's Complaint tells a radically different story than that which he presented following the incident.

Zanzi did in fact report an alleged incident involving Travolta to his superiors Alvarez and Rasmussen. Declaration of Lorena Alvarez ("Alvarez Decl."), ¶ 5; Declaration of Michael Rasmussen ("Rasmussen Decl."), ¶ 4.[2] Zanzi's post-incident report to his superiors, however, differed substantially from the heightened version he has advanced in the Complaint. Further, the "paperwork" Alvarez asked Zanzi to complete was the official Report, a sworn statement which Zanzi completed and executed on his own volition and which was to be submitted to the appropriate government agency if necessary. Alvarez Decl., ¶ 6, Exh. "A"; Rasmussen Decl., ¶ 5; Been Decl., ¶ 6.[3] Many of Zanzi's allegations in the Complaint directly

---

[2] While Zanzi contends that he personally met with Staff Captain Been in addition to Alvarez and Rasmussen, this is false. Declaration of Espen Been ("Been Decl."), ¶ 4. Contrary to Zanzi's allegations, he never personally spoke with Been following the incident. Instead, Alvarez and Rasmussen debriefed Been following their conversations with Zanzi, keeping Been informed of the situation. Id.

[3] To be clear, while Zanzi's statement was not specifically stated as under "penalty of perjury," it contains an "affirmation" that the information is "true and correct" and that the statement would be made "available to government officials." Alvarez Decl., ¶ 6, Exh. "A" at p. 3. Thus, he would be subject to potential criminal liability if the report were to be false.

1  conflict with both his prior verbal statements to his superiors, as well as his sworn,
2  written account of the incident made in the Report. Alvarez Decl., ¶¶ 5-6, 9-10,
3  Exh. "A"; Rasmussen Decl., ¶¶ 5-9.
4      Most notably, prior to the initiation of this action – nearly three years after
5  Zanzi's encounter with Travolta – Zanzi never reported any improper sexual
6  conduct to his superiors or in the Report, including the conduct alleged in
7  Paragraphs 10-15 in the Complaint. Alvarez Decl., ¶ 9; Rasmussen Decl., ¶ 8;
8  Been Decl., ¶ 9. To the contrary, following the incident Zanzi reported only that
9  he sat down in Travolta's room, gave Travolta a brief neck massage (lasting no
10 more than one minute), and left Travolta's room. Zanzi did not tell Alvarez,
11 Rasmussen and/or any other RCCL crew member aboard the Ship that Travolta had
12 allegedly disrobed and embraced him, the specific allegations that form the entire
13 basis for Zanzi's action. Thus, Zanzi's allegations in the Complaint regarding
14 Travolta's alleged improper sexual conduct directly conflict with his report to his
15 superiors following the incident. Alvarez Decl., ¶¶ 5, 9; Rasmussen Decl., ¶ 4, 8;
16 Been Decl., ¶ 9.
17     Zanzi previously failed to mention these allegations of improper sexual
18 conduct because the allegations are simply not true. In actuality, the conversation
19 between Zanzi, Alvarez and Rasmussen did not concern any impropriety on the part
20 of Travolta, but Zanzi's own material breach of RCCL company protocol by
21 inappropriately interacting with a passenger. Alvarez Decl., ¶ 5; Rasmussen Decl.,
22 ¶ 5. In speaking with his superiors following the incident, Zanzi conceded that he
23 had violated company protocol. Zanzi said that he did not know why he chose to
24 sit down in Travolta's room and to give Travolta a brief neck massage, as Zanzi
25 knew that he was breaching company policy in doing so. Zanzi was apologetic for
26 breaking protocol and pleaded with his superiors to consider the fact that he had
27 immediately reported his breach to them in deciding whether to discipline Zanzi for
28 his violations. Alvarez Decl., ¶ 5; Rasmussen Decl., ¶ 5. These were not the

actions of a man who had been subjected to the improper sexual conduct alleged in the Complaint.

As a result of Zanzi's violations of RCCL company policy, Rasmussen was required to complete the Discipline Report, wherein he detailed Zanzi's exhaustive account of the incident and addressed Zanzi's violations of protocol. Rasmussen Decl., ¶ 5; Exh. "B." Yet again, the Discipline Report, which was executed by Rasmussen, Alvarez and Zanzi himself on June 13, 2009 – four days after the alleged incident took place – is devoid of any reference to the improper sexual conduct alleged in the Complaint, including, most importantly, Travolta's purported disrobing and embrace of Zanzi. Rasmussen Decl., ¶ 5, Exh "B". Instead, the Discipline Report corroborated Zanzi's post-incident conversations with Alvarez and Rasmussen, as well as the written Report he completed shortly following the incident – Zanzi entered Travolta's room, sat down, gave Travolta a brief neck massage, and left. Rasmussen Decl., ¶ 5, Exh "B".

While the utter absence, until now, of any claim regarding improper sexual conduct is by itself sufficient to bring the veracity of Zanzi's entire Complaint into question, the inconsistencies do not end there. Zanzi's allegations in the Complaint are rife with several other material departures from his post-incident report to his superiors and written account of the encounter.

First, in the Complaint, Zanzi claims for the first time that Travolta offered him $12,000 to remain silent regarding their encounter. Complaint, ¶¶ 16-17. Remarkably, Zanzi previously failed to mention this purported financial offer until now, as his verbal account to his superiors, the written Report Zanzi personally completed following the incident, and the Discipline Report which Zanzi signed off on are completely void of any reference to such an offer from Travolta. Alvarez Decl., ¶¶ 5-6, 10; Rasmussen Decl., ¶ 4-5, 9; Been Decl., ¶ 10. Given the critical nature of this allegation, Zanzi's outright failure to report this supposed offer until now casts serious doubt on his credibility.

1    Next, Zanzi alleges in the Complaint that when he first went to Travolta's
2 room, there were two other gentlemen present. Complaint, ¶ 4. When Zanzi
3 recounted the alleged incident to Alvarez and Rasmussen, however, he claimed that
4 there was only one other person present when Zanzi first arrived. Alvarez Decl.,
5 ¶ 5; Rasmussen Decl., ¶ 4.

6    Further, Zanzi now claims that he suffered substantial injuries from the
7 alleged incident which required "treatment" beginning in July 2009 and continuing
8 through the present. Complaint, ¶ 24. Zanzi's newfound, fabricated allegations,
9 however, contradict his post-incident report to his superiors, where he confirmed
10 that he in fact was not injured and did not require medical attention. When asked
11 "Did you receive any injuries as a result of this incident? If so, please describe in
12 detail," Zanzi wrote "No nothing at all." Alvarez Decl., ¶ 6, Exh. "A"; Rasmussen
13 Decl., ¶ 5. Zanzi's newfound contention that he suffered *any* injuries, much less
14 injuries necessitating three years of treatment, is implausible to say the least.

15    Finally, following Zanzi's account of the alleged incident to his superiors, he
16 was asked whether there were any additional facts that he would like to add. Zanzi
17 replied "no," assuring his superiors that his recitation of the events were complete
18 and accurate. Alvarez Decl., ¶ 6, Exh. "A"; Rasmussen Decl., ¶ 5. When Zanzi
19 completed the Report, he was again offered the opportunity to provide additional
20 facts when asked "Is there anything else that would be important to know about this
21 incident?" Once again, Zanzi offered no further information, choosing instead to
22 leave the response blank. Alvarez Decl., ¶ 6, Exh. "A". If Zanzi in fact had
23 additional information to provide, RCCL granted him numerous opportunities to do
24 so. Again, Zanzi's failure to supplement his oral statements and/or his written
25 Report casts serious doubt on his conflicting allegations in the Complaint.

26    Zanzi's Complaint is littered with rampant falsities and misrepresentations,
27 each of which is flatly contradicted by the voluminous evidence surrounding Zanzi's
28 encounter with Travolta. Zanzi's attempt to rewrite history through this revisionist

1  account of the alleged incident will fail, likely after Travolta is forced to exhaust
2  considerable resources in defending against Zanzi's baseless claims.  Accordingly,
3  the Court should protect Travolta by imposing the requested bond on Zanzi.

### III.

### LEGAL ARGUMENT

**A.   The Court Has Authority To Require Zanzi To File An Undertaking.**

While the Federal Rules of Civil Procedure do not contain a specific provision relating to security costs, "the federal district courts have inherent power to require plaintiff to post security for costs." *Simulnet East Assoc. v. Ramada Hotel Operating Co.,* 37 F.3d 573, 574 (9th Cir. 1994).  In exercising this inherent power, a district court typically applies the law of the forum state in which the court sits.  "Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with regard to security for costs, as they did prior to the federal rules; *this is especially common when a non-resident party is involved*."  *Id.* (emphasis added), citing 10 Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2nd § 2671; *see also*, *Plata v. Darbun Enterprises, Inc.,* 2009 WL 975233 at *33-37 (S.D. Cal.) (recognizing that "federal courts have inherent authority to require plaintiffs to post security for costs").  Accordingly, the Court should look to the state law of California in determining whether Zanzi should be required to file the requested undertaking.

Specifically, the Court should apply C.C.P. § 1030, which governs the procedure and circumstances under which a foreign plaintiff may be required to file an undertaking to cover a potential award of costs to the defendant.  "When the plaintiff in an action . . . resides out of state . . . the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action."  C.C.P. § 1030(a).  Such a motion "shall be made on the grounds

that *the plaintiff resides out of the state . . . and that there is a reasonable possibility that the moving defendant will obtain judgment in the action . . .*" C.C.P. § 1030(b) (emphasis added). "If the court, after hearing, determines that the grounds for the motion have been established, the court shall order that the plaintiff file the undertaking in an amount specified in the court's order as security for costs and attorney's fees." C.C.P. § 1030(c).

A defendant seeking to impose a cost bond on a foreign plaintiff need only satisfy a liberal evidentiary standard. "To satisfy the requirements of section 1030, [a] Defendant [] must produce sufficient evidence to demonstrate [it has] a '*reasonable possibility*' of defeating each of Plaintiff's claims, but no more." *Gabriel Tech. Corp. v. Qualcomm, Inc.*, 2010 WL 3718848 at *5 (S.D. Cal. 2010) (emphasis added) (recognizing that to satisfy the "reasonable possibility" standard, a defendant need not "substantially refute" each of the plaintiff's claims; rather, the defendant need only provide "affirmative evidence" in support of his possible defense), citing C.C.P. § 1030(b), *Kourtis v. Cameron,* 2009 WL 4885054 at *1 (9th Cir. 2009).

> The purpose of the statute is to enable a California resident sued by an out-of-state resident to secure costs in light of the difficulty of enforcing a judgment for costs against a person who is not within the court's jurisdiction. ***The statute therefore acts to prevent out-of-state resident from filing frivolous lawsuits against California residents.***

*Ashafie v. Lallande*, 171 Cal. App. 4th 421, 428-29 (2009) (citations and quotations omitted) (emphasis added); *see also*, *Shannon v. Sims Serv. Center*, 164 Cal. App. 3d 907, 913 (1985) (recognizing that the purpose of C.C.P. § 1030 is to assist California defendants to "secure costs in light of the difficulty of enforcing a judgment against a person who is not within the court's jurisdiction").

Here, the Court should exercise its inherent power and order Zanzi to file an undertaking so that Travolta can adequately protect himself against Zanzi's frivolous

claims by requiring Zanzi to post security for the exorbitant costs Travolta will incur in this action.

### B. **Plaintiff Zanzi Is A Foreign Resident**.

While Zanzi has noticeably failed to plead his country of residence in the Complaint, Zanzi is a resident of Chile. Alvarez Decl, ¶ 6; Exh. "A." As such, he is outside of the Court's jurisdiction. *Ashafie*, 171 Cal. App. 4th at 428-429. Thus, the first prong of C.C.P. § 1030 is satisfied, and if the Court finds a "reasonable possibility" that Travolta will obtain a favorable judgment, the Court should order Zanzi to file the requested undertaking. C.C.P. § 1030(c).

### C. **Travolta Can Easily Satisfy The Liberal "Reasonable Possibility" Standard**.

In order to compel Zanzi to file an undertaking under C.C.P. § 1030, Travolta need only demonstrate a "reasonable possibility" of defeating Zanzi's claims. *See Gabriel Tech. Corp.*, 2010 WL 3718848 at *5. Given the blatant, material discrepancies in Zanzi's Complaint, when compared to Zanzi's prior accounts of the alleged incident, Travolta can easily satisfy this liberal standard.

*Kourtis*, *supra*, 2009 WL 4885054, sheds light on the low evidentiary threshold associated with the "reasonable possibility" standard. In *Kourtis*, plaintiff copyright owners brought suit for copyright infringement against defendant film producer. Upon defendant's request, the district court imposed a bond in the amount of $100,000 against plaintiffs, out-of-state residents. *Kourtis*, 2009 WL 4885054 at *1. The Court of Appeal, in affirming the district court's imposition of the bond, held that defendant had demonstrated "at least 'a reasonable possibility'" that he would prevail. Defendant satisfied his burden under C.C.P. § 1030 solely by directing the court to a prior district court decision 14 years earlier in an action involving different parties but based on a similar factual footing. *Id.* at *1-2. Moreover, in affirming the imposition of the costs bond, the Court of Appeal found

that "the $100,000 amount initially ordered was not unreasonable based on the information available to the district court." *Id*.

In clarifying this low evidentiary standard, the California Court of Appeal recognized that because "it is impossible to predict in advance the outcome of a trial by jury," a defendant seeking to force a plaintiff to file an undertaking pursuant to C.C.P. § 1030 need only present "the best evidence available to divine the possible outcome . . . which is all that section 1030, subdivision (a) of the code of Civil Procedure requires." *Shannon*, *supra*, 164 Cal. App. 3d at 914.  Thus, while this action is still in the early stages, the Court should weigh the evidence currently in the record in determining whether Travolta has a reasonable possibility of defeating Zanzi's claims and, as such, whether Zanzi should be required to file the requested undertaking.

Here, all three of Zanzi's causes of action are based solely on the improper sexual conduct alleged in Paragraphs 10-15 of the Complaint, the very conduct that Zanzi did not report to his superiors, did not include in the Report he completed, and absolutely failed to allege at any time prior to the initiation of this action. Complaint, ¶¶ 29-31, 39, 47.  Like the *Kourtis* court, this Court should consider and evaluate the evidence – or, in Zanzi's case, lack of evidence – supporting the parties' respective positions in determining whether Travolta has demonstrated a reasonable possibility of defeating Zanzi's claims.

### D. The Undertaking Should Be In The Amount Of At Least $75,000.

Given that the underlying events giving rise to Zanzi's allegations occurred on a RCCL cruise ship employing crew members from around the world, the costs in this action will be quite substantial.  Weinsten Decl., ¶ 3.  Travolta expects that his litigation costs will exceed $75,000.  Counsel for Travolta will be forced to literally travel the world conducting discovery in this matter, as virtually all of the key percipient witnesses live abroad.  By way of example, in order to depose just

the three RCCL employees Zanzi mentions by name in the Complaint, let alone the numerous other crew members and/or passengers with relevant information pertaining to the alleged incident, Counsel for Travolta will likely be forced to travel to Argentina, Norway and possibly Australia. Weinsten Decl., ¶¶ 4-5. Also, Zanzi claims he has several witnesses who are Chilean nationals and will have to be deposed in Chile. Weinsten Decl., ¶ 4. Moreover, given the nature of Zanzi's allegations, Travolta will be required to retain multiple experts, including a psychiatric expert to analyze and assess Zanzi's claims and alleged damages. Weinsten Decl, ¶ 6. Put simply, this action presents a logistical nightmare. Given the amplified costs caused by the international nature of this action, as well as the absolute lack of evidence supporting any of Zanzi's key allegations, Travolta's request for an undertaking is even more appropriate. Thus, the Court should require Zanzi to file such an undertaking in the amount of at least $75,000. Weinsten Decl, ¶ 7.

## IV.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and require Plaintiff Zanzi to file an undertaking in the amount of $75,000 within thirty days.

DATED: December 26, 2012

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
MICHAEL E. WEINSTEN
DANIEL R. GUTENPLAN

By: _____/s/_____
MARTIN D. SINGER
Attorneys for Defendant
JOHN TRAVOLTA