UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FABIAN ZANZI,                          )     2:12-cv-05393-SVW-AJW
                                       )
                Plaintiff,             )     **ORDER DENYING DEFENDANT'S**
                                       )     **MOTION TO COMPEL ARBITRATION**
         v.                            )     **[12]**
                                       )
JOHN TRAVOLTA,                         )
                                       )
                Defendant.             )
_____       )

I.    **INTRODUCTION**

     On June 21, 2012, Fabian Zanzi ("Plaintiff") filed this tort
action against John Travolta ("Defendant") for (1) assault and battery;
(2) intentional infliction of emotional distress; and (3) negligent
infliction of emotional distress.  (Dkt. 1 ("Compl.") at 1).  Because
the alleged misconduct occurred on a cruise ship navigating the open
seas, the Court has jurisdiction pursuant to 28 U.S.C. § 1333.  On
October 9, 2012, Defendant filed the instant Motion to Compel
Arbitration.  (Dkt. 12).  For the reasons set forth in this Order, the
Motion to Compel is DENIED.
//

## II.   FACTUAL BACKGROUND

### A.   Relevant Allegations

Plaintiff worked for Royal Caribbean Cruise, Ltd. ("Royal Caribbean") as a room attendant on its cruise ships.  On June 9, 2009, during one of its cruises, Royal Caribbean assigned Plaintiff to be the personal room attendant for Defendant, a tour passenger.  (<u>Compl.</u> ¶¶ 2-3).  At approximately 4:00 p.m. that day, Plaintiff delivered a meal order to Defendant's suite.  (<u>Id.</u> ¶ 6).  Plaintiff alleges that Defendant ordered Plaintiff to stay and asked Plaintiff to give him a neck massage.  (<u>Id.</u> ¶ 9).  Plaintiff obliged, and as he began, Defendant allegedly disrobed and "became completely naked exposing his erect penis to Plaintiff."  (<u>Id.</u> ¶ 11).  Defendant then allegedly "forcefully embraced" Plaintiff, causing Plaintiff "to experience pain, shock, embarrassment, distress, and fear."  (<u>Id.</u> ¶ 12).

After the incident, Plaintiff allegedly reported the events to his superiors, including Human Resources Manager Lorena Alvarez, Hotel Director Michael Rasmussen, and Staff Captain Espen Been.  (<u>Id.</u> ¶¶ 18-19).  Plaintiff claims that Alvarez required him to fill out paperwork regarding the incident, but forbade him to relate information regarding the nudity or sexual contact with Defendant.  (<u>Id.</u> ¶ 20).  Plaintiff further asserts that he was ordered to stay in a "segregated room" for five days until Defendant left the ship.  (<u>Id.</u> ¶ 22).

In July 2009, Plaintiff allegedly began seeking treatment "for injures sustained" that day, and "continues to pursue treatment for the above referenced injuries."  (<u>Id.</u> ¶ 24).  On June 20, 2012, Plaintiff initiated arbitration against Royal Caribbean pursuant to his Employment Agreement, asserting various claims, including negligence

1    and false imprisonment.  (Id. ¶ 25); (Rubin Decl., Ex. D).  Plaintiff

2    then filed this action against Defendant, seeking compensatory damages,

3    consequential damages, and punitive damages.  (Id. at 10).

4        **B.   Arbitration Agreements**

5        Defendant now seeks to compel arbitration on the ground that

6    Plaintiff's claims fall within the ambit of at least two separate

7    arbitration agreements.  In particular, Defendant contends that

8    Plaintiff's claims are governed by the arbitration clauses in the

9    "Cruise Tour Ticket Contract" (hereafter, "Cruise Contract"), and

10   Plaintiff's Employment Agreement with Royal Caribbean.  The Court

11   briefly describes each contract below.

12           **1.   Cruise Contract Arbitration Provision**

13       To be a passenger on the cruise ship, Defendant was required to

14   enter into a "Cruise Tour Ticket Contract" with Royal Caribbean.

15   (Rubin Decl. ¶ 2, Ex. C).[1]  Plaintiff was not a signatory to the Cruise

16   Contract.  The contract begins with the disclaimer:

17           YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS
             IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS
18           IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS
             CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND
19           SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND
             YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.
20
21   (Rubin Decl., Ex. C at 3).  Section 10 provides, in pertinent part:

22           10. NOTICE OF CLAIMS AND COMMENCEMENT OF SUIT OR
             ARBITRATION; SECURITY:
23
             a. TIME LIMITS FOR PERSONAL INJURY/ILLNESS/DEATH CLAIMS:
24           NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER, THE
             VESSEL OR THE TRANSPORT FOR PERSONAL INJURY, ILLNESS OR
25           DEATH OF ANY PASSENGER UNLESS WRITTEN NOTICE OF THE
             CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO
26           CARRIER AT ITS PRINCIPAL OFFICE WITHIN SIX (6) MONTHS

27
     [1]  Danielle Rubin is the Manager of Employee Legal Services for Royal
28   Caribbean.  (Rubin Decl. ¶ 1).

FROM THE DATE OF THE INJURY, ILLNESS OR DEATH AND SUIT
IS COMMENCED (FILED) WITHIN ONE ( 1) YEAR FROM THE DATE
OF SUCH INJURY, ILLNESS OR DEATH AND PROCESS SERVED
WITHIN 120 DAYS AFTER FILING, NOTWITHSTANDING ANY
PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE
CONTRARY.

b. **ARBITRATION OF ALL OTHER CLAIMS**: ANY AND ALL OTHER
DISPUTES, CLAIMS, OR CONTROVERSIES WHATSOEVER, EXCEPT
FOR PERSONAL INJURY, ILLNESS OR DEATH OF A PASSENGER,
**BETWEEN PASSENGER AND CARRIER**, VESSEL OR TRANSPORT,
WHETHER BASED ON CONTRACT, TORT, STATUTORY,
CONSTITUTIONAL OR OTHER LEGAL RIGHTS, INCLUDING BUT NOT
LIMITED TO ALLEGED VIOLATION OF CIVIL RIGHTS,
DISCRIMINATION, CONSUMER OR PRIVACY LAWS, OR FOR ANY
LOSSES, DAMAGES OR EXPENSES, **RELATING TO OR IN ANY WAY
ARISING OUT OF OR CONNECTED WITH THIS CONTRACT OR
PASSENGER'S CRUISE, NO MATTER HOW DESCRIBED, PLEADED OR
STYLED, SHALL BE REFERRED TO AND RESOLVED EXCLUSIVELY BY
BINDING ARBITRATION** PURSUANT TO THE UNITED NATIONS
CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN
ARBITRAL AWARDS . . . AND THE FEDERAL ARBITRATION ACT
. . . ("FAA") SOLELY IN MIAMI, FLORIDA, U.S.A. TO THE
EXCLUSION OF ANY OTHER FORUM.

(Rubin Decl., Ex. C at 8-9) (emphasis added).  In addition, the term

"Carrier" is explicitly defined to encompass "officers, directors,

employees, agents, crew or pilots" of the "Vessel Operator," i.e. Royal

Caribbean.  (Id., Ex. C at 3).

## 2.   Plaintiff's Employment Agreement Arbitration Provision

Meanwhile, Plaintiff's Employment Agreement with Royal Caribbean

contains the following arbitration provision:

If not resolved by the Union, Owners/Company,
and/or the Seafarer, all grievances and any other
dispute whatsoever, whether in contract,
regulatory, tort or otherwise, including
constitutional, statutory, common law, admiralty,
intentional tort and equitable claims, **relating to
or in any way connected with the seafarer's service
for the Owners/Company, including but not limited
to claims for personal injury or death**, no matter
how described, pleaded or styled, and whether
asserted against the Owners/Company, Master,
Employer, Ship Owner, vessel or vessel operator,
shall be referred to and resolved exclusively by
binding arbitration pursuant to the United Nations
Conventions on Recognition and Enforcement of

Foreign Arbitral Awards.

(Rubin Decl., Ex. D at 28) (emphasis added).  The parties do not dispute that the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), applies to both agreements.

**III. LEGAL STANDARD**

The Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002).  Such questions are governed by the federal substantive law of arbitrability. See Chastain v. Union Sec. Life Ins. Co, 502 F. Supp. 2d 1072, 1075 (C.D. Cal. 2007) (internal quotation marks omitted) (citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417 n.4 (4th Cir. 2000)).

It has been stated that the FAA reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991).  Nevertheless, "arbitration is a matter of contract [interpretation] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Chastain, 502 F. Supp. 2d at 1075 (internal quotation marks omitted). Thus, when the question is "not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement, . . . the liberal federal policy regarding the scope of arbitrable issues is inapposite." Comer v. Micor, Inc., 436 F.3d 1098,

1  1104 n.11 (9th Cir. 2006).  Therefore, the Court is not bound by any
2  stated policy favoring arbitration in reviewing Defendant's Motion.

3       Finally, "[a] petition or motion to compel arbitration is in
4  essence a suit in equity seeking specific performance of an arbitration
5  agreement.  The trial court sits as a trier of fact, weighing all the
6  declarations and other evidence to reach a final determination."
7  Chastain, 502 F. Supp. 2d at 1075 (internal citations omitted).

8  **IV.  DISCUSSION**

9       Defendant advances four arguments to support its Motion to Compel
10 Arbitration.  First, Defendant argues that Plaintiff must arbitrate
11 because he is a "direct party" to the Cruise Contract arbitration
12 provision.  Second, Defendant argues that even though Plaintiff was not
13 a signatory to the Cruise Contract, he is nevertheless bound by the
14 arbitration clause as an agent of a signatory, i.e. Royal Caribbean.
15 Third, Defendant contends that Plaintiff must arbitrate under the
16 Cruise Contract because he was a third-party beneficiary of that
17 contract.  Fourth, Defendant claims that Plaintiff is equitably
18 estopped from litigating the instant claims against Defendant because
19 they are interdependent with Plaintiff's claims against Royal
20 Caribbean, which must be arbitrated under Plaintiff's Employment
21 Agreement.  The Court addresses each argument in turn.

22      **A.   "Direct Party" Status Does Not Mandate Arbitration**

23      Defendant argues that Plaintiff must arbitrate because he is a
24 "direct party" to the Cruise Contract and its arbitration provision.
25 More specifically, Defendant points out that the Cruise Contract
26 requires arbitration of all disputes between the "Passenger" and the
27 "Carrier," and the term "Carrier" is defined to encompasses employees
28

of Royal Carribean, such as Plaintiff.  (Rubin Decl., Ex. C at 3, 8-9).
In short, Defendant claims that Plaintiff is bound to arbitrate because
the Cruise Contract's arbitration clause purports to extend to disputes
between the Passenger and Plaintiff.

This argument misses the mark.  Defendant elides the difference
between the second step of the arbitration inquiry — i.e., whether the
arbitration clause encompasses the dispute in issue - with the
threshold question whether the parties agreed to arbitrate.  Under
Defendant's approach, the fact that Plaintiff's dispute falls within
the scope of the arbitration clause is sufficient, in and of itself, to
bind Plaintiff.  Such a proposition, however, fails to take account of
the bedrock principle that "arbitration is a matter of contract and a
party cannot be required to submit to arbitration any dispute which he
has not agreed so to submit." United Steelworkers v. Warrior & Gulf
Navigation Co., 363 U.S. 574, 582 (1960); Samson v. NAMA Holdings, LLC,
637 F.3d 915, 923 (9th Cir. 2011) (same).  Thus, the pertinent inquiry
is not whether Plaintiff's dispute falls within the Cruise Contract's
arbitration provision (it might), but rather whether Plaintiff may be
compelled to arbitrate despite being a non-signatory.  As the Court
explains in the next section, while there are certain limited
circumstances in which a signatory can compel a non-signatory to
arbitrate, none of these circumstances are present here.

Further, upon careful examination, none of the cases cited by
Defendant support the notion that a non-signatory can be bound to
arbitrate solely because his dispute falls within the literal scope of
the arbitration clause.  For example, in Letizia v. Prudential Bache
Sec., Inc., 802 F.2d 1185 (9th Cir. 1986), the Ninth Circuit held that

because the plaintiff-investor and defendant-brokerage firm signed an arbitration agreement, the brokerage firm's non-signatory employees could compel the signatory plaintiff to arbitrate his claims against them.  To be sure, the Customer Agreement arguably covered the dispute, stating that plaintiff agreed to arbitrate "any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof."  Opening Brief for Appellant, Ex. A, Letizia v. Prudential Bache Sec., Inc., No. 85-2278 (9th Cir. Oct. 15, 1985).  However, the court did not rely on this fact alone to bind the non-signatory employees.  Rather, the court's decision was rooted in the proposition that "nonsignatories of arbitration agreements may be bound by the agreement *under ordinary contract and agency principles*." Id. at 1187 (emphasis added).  Thus, Letizia does not stand for the facile rule that whenever an arbitration clause encompasses a dispute involving a non-signatory, this *ipso facto* compels the non-signatory to arbitrate the claim.  Rather, the decision teaches courts to apply relevant agency and contract principles to determine whether an arbitration agreement attaches to non-signatories.[2]

Nor is the Court persuaded by Defendant's citation to Ripmaster v. Toyoda Gosei, Co., Ltd., 824 F. Supp. 116 (E.D. Mich. 1993).  There, the court held that a non-signatory plaintiff was bound to arbitrate because he was a third-party beneficiary to an agreement between his employer and the signatory defendant, which agreement contained an arbitration provision.  Id. at 117.  In particular, the court

---

[2] Defendant's reliance on Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir. 1993), is similarly misplaced. Like in Letizia, Pritzker relied on "traditional agency theory" to conclude that non-signatory employees of a signatory could compel the opposing signatory plaintiff to arbitrate.  Id. at 1122.

determined that the plaintiff was a third-party beneficiary because he asserted that he did not receive his "rightful share" of commissions when the defendant failed to pay the plaintiff's employer the "agreed upon share of commissions."  <u>Id.</u>  Thus, although <u>Ripmaster</u> is relevant to the third-party beneficiary doctrine, which the Court addresses further below, it provides no support for Defendant's "direct party" argument.

Finally, the Court's conclusion is consistent with the Fifth Circuit's decision in <u>Covington v. Aban Offshore Ltd.</u>, 650 F.3d 556 (5th Cir. 2011), which involved comparable facts.  There, the district court initially held that plaintiffs, who were officers and employees of a contractor named Beacon, were obligated to arbitrate their dispute with the defendant customer, even though it was Beacon - not plaintiffs - who signed an arbitration agreement with the defendant.  <u>Id.</u> at 557-58.  The arbitration agreement broadly stated that "[a]ll disputes arising hereunder or related to the work to be performed on the Vessel by the Contractor" shall be subject to arbitration.  <u>Id.</u> at 558.  On appeal, the defendant-appellee defended the district court's ruling, arguing that because the arbitration provision applies to "all disputes arising hereunder," it was clearly intended to bind Beacon's agents.  <u>Id.</u> at 562.  However, the Fifth Circuit rejected this argument and reversed, for two reasons.  First, the court observed that the arbitration provision also "clearly and explicitly indicates that it is only applicable to 'the parties.'"  <u>Id.</u>  Second, the court reasoned that the FAA "does not require parties to arbitrate when they have not agreed to do so."  <u>Id.</u> (internal quotation marks omitted).  The court concluded that "[b]ecause no one has alleged that Beacon had the

authority to bind the [plaintiffs] individually and neither [plaintiff]
signed the contract in his individual capacity, they cannot have been
parties to the contract.  Consequently, the [plaintiffs] are not bound
by the arbitration provision." Id.

The same reasoning applies here.  As an initial matter, the Cruise
Contract specifically defines the "Agreement" as being "between
Passenger and *Operator* for the Cruise or Cruise Tour." (Rubin Decl.,
Ex. C at 3 ¶ 2(a)) (emphasis added).  The "Operator" is defined solely
as "RCL (UK) Ltd., a subsidiary of Royal Caribbean Cruises Ltd." (Id.,
Ex. C at 4 ¶ 2(d)); 12 ¶ 18).  Thus, by its own terms, the Cruise
Contract does not recognize Plaintiff as a party.  Further, as the
Court explains fully below, there is no evidence here that Royal
Caribbean was authorized to bind Plaintiff to the Cruise Contract.
Therefore, as in Covington, the mere fact that Plaintiff's dispute
arguably falls within the scope of the arbitration clause is
insufficient to compel him to arbitrate.

In sum, the Court rejects the "direct party" argument.  As the
cases above foreshadow, the threshold question is whether traditional
principles of contract or agency permit the Court to compel a
non-signatory such as Plaintiff to arbitrate his claims against a
signatory.

**B.   Agency Theory Does Not Bind Plaintiff to Arbitrate under Cruise Contract**

Defendant next argues that although Plaintiff is not a signatory
to the Cruise Contract, Plaintiff nevertheless may be compelled to
arbitrate his claims under "agency theory," namely because Plaintiff is
an employee of Royal Caribbean, a signatory to the Cruise Contract.
The Court disagrees.  Federal courts have declined to apply traditional

agency principles in the manner Defendant suggests.

### 1.   Relevant Authorities

The Ninth Circuit has recognized that, in certain circumstances, a signatory to an arbitration agreement can force a non-signatory plaintiff to arbitrate his claims pursuant to "ordinary contract and agency principles," which include " '1) incorporation by reference; 2) assumption; 3) *agency*; 4) veil-piercing/alter ego; and 5) estoppel.' " Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (emphasis added) (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).

At its core, the agency prong asks whether the party that entered the arbitration agreement had authority to bind the non-signatory. For instance, in Comer, the court considered whether an ERISA-plan participant could be compelled to arbitrate his ERISA claim against the defendant investment advisors, where the plan trustees — but not the participant – had signed an arbitration agreement with the defendants. 436 F.3d at 1099. The court answered in the negative. Id. at 1101. The panel specifically rejected the notion that the "agency" theory could compel the plaintiff to arbitrate his claim. The court reasoned that the "trustees [cannot] be said to have acted as [plaintiff's] agents in entering into the investment management agreements." Id. at 1102.

The Fifth Circuit took a similar approach in Covington, which the Court has already discussed in part. To review, the Fifth Circuit ruled that "under established principles of agency and contract law, the fact that Beacon entered into the contract with [the defendant], thereby agreeing to the arbitration clause, did not cause Beacon's

agents, the [plaintiffs], to be personally bound by that agreement."
Covington, 650 F.3d at 559.  Although one of the plaintiffs executed
the contract on behalf of Beacon, the court reasoned that this standing
alone did not personally bind them.  Id. (citing Restatement (Second)
of Agency § 320 (1958) ("Unless otherwise agreed, a person making or
purporting to make a contract with another as agent for a disclosed
principal does not become a party to the contract.")).  Most important,
the court observed that "[the defendant] has not alleged the existence
of an agreement that empowered Beacon to contract on behalf of the
[plaintiffs] as individuals."  Id.  Accordingly, the court concluded
that the plaintiffs were not bound to arbitrate their dispute with the
defendant.

    The Second Circuit adopted the same logic in Merrill Lynch Inv.
Managers v. Optibase, Ltd., 337 F.3d 125 (2d Cir. 2003).  There, a
disgruntled investor sought to compel arbitration against its broker's
affiliate, Merrill Lynch Investment Managers ("MLIM"), even though it
was the broker, not MLIM, that signed the arbitration agreement with
the investor.  Id. at 127.  On appeal, the investor relied on "agency
theory" to argue that MLIM was bound by the agreement by virtue of its
affiliation with the broker.  Id. at 130.  The Second Circuit rejected
this argument, noting that " '[a]gency is the fiduciary relation which
results from the manifestation of consent by one person to another that
the other shall act on his behalf and subject to his control, and
consent by the other so to act.' "  Id. (quoting Restatement (Second)
of Agency § 1 (1958)).  After examining the relationship between MLIM
and the broker, the court concluded that the mere fact that the two
entities enjoyed "mutual benefits derived from affiliation" was

insufficient to establish that MLIM authorized the broker to act as its agent in entering the arbitration agreement. <u>Id.</u> Thus, the court concluded that MLIM was not bound by the arbitration agreement which it did not sign. <u>Id.</u> at 131.

Likewise in <u>Bel-Ray Co. v. Chemrite (Pty) Ltd.</u>, 181 F.3d 435 (3d Cir. 1999), the Third Circuit addressed "whether an employee or agent who did not agree to arbitrate can be compelled to arbitrate his personal liability on the basis of a commitment made by the corporation he serves." <u>Id.</u> at 445. The court reasoned that "under traditional agency principles, the only other way we understand that an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal *acting on her behalf* with actual, implied, or apparent authority." <u>Id.</u> (emphasis added). The court found nothing in the record to support such a finding, and therefore reversed the district court's order compelling arbitration. <u>Id.</u> at 446.

In sum, "agency theory" does not dictate that a non-signatory may be compelled to arbitrate solely by virtue of an arbitration agreement entered into by its principal. The foregoing cases collectively teach that a non-signatory employee is bound to arbitrate under "agency principles" only to the extent that its principal signed an arbitration agreement with the authority to bind the employee in his individual capacity.

The foregoing precedent, the Court further notes, comports with other general principles of agency law. As it has been written, "[t]he fact that an act, otherwise a tort upon an agent, is committed by another while the agent is conducting the affairs of the principal, or because of the agency relation, does not prevent the agent from

maintaining an action against the other on his own account."
Restatement (Second) of Agency § 374(1).

> An agent whose personal interests have been
> interfered with can maintain an action as though he
> were not at the time employed as an agent, and this
> right is free from interference by the principal.
> Thus, if an agent is assaulted while protecting his
> principal's goods, or if he is defamed because of
> his relations with the principal, the **resulting
> cause of action belongs to him and to him only**,
> although the principal may also sue for injuries to
> his own interests occasioned by the same act.

Id. cmt 1 (emphasis added).  This principle of agency prohibits an employer from divesting an employee of his personal claims, unless the principal was authorized by the employee to do so.

###     2.    Analysis

Having reviewed the applicable law, the Court concludes that traditional principles of agency law do not suggest that Plaintiff is bound to arbitrate his claim merely because he is an employee of Royal Caribbean.  The critical question in each of the cases discussed above was whether the principal was authorized to bind the non-signatory employee to the terms of the principal's arbitration agreement with a third party.  Here, the Court has received no evidence that Plaintiff authorized Royal Caribbean to bind it to the Cruise Contract.  Thus, no theory of agency supports the conclusion that the Court may compel Plaintiff to arbitrate pursuant to an agreement he never signed.

###     3.    Defendant's Arguments and Objections

The cases cited by Defendant do not counsel otherwise.  In Letizia, 802 F.2d at 1188, the Ninth Circuit held that where a plaintiff brought claims against a defendant brokerage firm and its employees, the employees could compel the plaintiff to arbitrate, even though the employees were non-signatories to the arbitration agreement

between plaintiff and the brokerage firm.  The present case, however, is clearly distinguishable.  In Letizia, the non-signatory employees *wanted* to arbitrate; thus there was no occasion for the court to consider whether it could *compel* such non-signatory employees to arbitrate.  Rather, Letizia concerned whether a court could compel a *signatory* to arbitrate its claims against non-signatory employees.  Thus, Letizia did not hold that a court may compel a non-signatory employee to submit to an arbitration agreement signed only by his principal and the opposing party.[3]

   The Third Circuit's decision in Pritzker, 7 F.3d at 1121, is similarly off base.  In Pritzker, the issue was whether a *signatory* to an arbitration agreement could be compelled to arbitrate its claims against two non-signatory defendants that were agents of the other party to the agreement.  As such, Pritzker, like Letizia, had no occasion to address the inverse question *sub judice*: whether agency principles compel a non-signatory agent to arbitrate solely by virtue of an agreement entered into by his principal.

   Defendant protests that this distinction is unsatisfactory, noting that "[Plaintiff] proffers no rationale whatsoever to justify why agency principles should not be equally applicable to compelling nonsignatory plaintiff arbitration." (Reply at 4:1-3).  However, federal courts uniformly have rejected this "distinction without a difference" argument.

   For example, in Optibase, the Second Circuit distinguished

---

[3] Even if the Court were to take Letizia at face value, it would be unhelpful because it fails to identify what principle of contract or agency it relies on, if any, in reaching its holding.  Letizia, 802 F.2d at 1187-88.

Pritzker because the case involved a "non-signatory . . . that *sought* arbitration." Id. at 131 (internal quotation marks omitted). Significantly, the Second Circuit squarely rejected the investor's argument that this distinction was "irrelevant," instead finding it "decisive." Id.  The court reasoned:

> [I]t matters whether the party resisting arbitration is a signatory or not.  [A] court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party . . .  Thus a willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an "alternative estoppel theory," which takes into consideration "the relationships of persons, wrongs and issues."  But a willing signatory . . . seeking to arbitrate with a non-signatory that is unwilling . . . must establish at least one of the five theories described in Thomson-CSF, 64 F.3d at 776-80.

Id. (internal citations and quotation marks omitted).  The Second Circuit concluded that "[a]rbitration is a matter of contract; so 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' "  Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

     The Third Circuit also has found this distinction to be material. In Bel-Ray, the court noted that both Letizia and Pritzker were distinguishable because they concerned whether a court could compel a *signatory* to an arbitration agreement to arbitrate his claims against non-signatory agents of the other signatory.  Thus, in the Third Circuit's view, the question was not whether the signatory was bound by its own agreement (since perhaps this was obvious), but rather whether the dispute fell within the scope of the arbitration clause.  181 F.3d at 444-45.  By contrast, the Bel-Ray court observed that the legal question before it was "not the construction of the arbitration

clause," but rather "whether an employee or agent who did not agree to arbitrate can be compelled to arbitrate his personal liability on the basis of a commitment made by the corporation he serves." Id. at 445. See also E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 202 (3d Cir. 2001) (noting that doctrine of equitable estoppel applies differently when used to compel signatories, as opposed to non-signatories, to arbitrate, and emphasizing that this distinction matters).

Most recently, in Covington, the Fifth Circuit quoted Optibase for its reminder that "in determining whether a party can be compelled to arbitrate, 'it matters whether the party resisting arbitration is a signatory or not.' " 650 F.3d at 561 (quoting Optibase, 337 F.3d at 131); see also Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) (noting that the doctrine of "community of interest" applies differently when used to compel signatories, as opposed to non-signatories, to arbitrate, and stating that "the nature of arbitration makes the distinction important").[4]

Thus, Letizia and Pritzker are inapposite because they only applied agency theory to empower non-signatory agents to compel an

---

[4] Other federal courts have agreed that the distinction matters. See, e.g., Thomson-CSF, 64 F.3d at 779 ("[T]he situation here is inverse: E & S, as signatory, seeks to compel Thomson, a non-signatory. While E & S suggests that this is a non-distinction, the nature of arbitration makes it important." (internal quotation marks omitted)); CD Partners, LLC v. Grizzle, 424 F.3d 795, 799 (8th Cir. 2005) ("The test for determining whether a nonsignatory can force a signatory into arbitration is different from the test for determining whether a signatory can force a nonsignatory into arbitration."); Amisil Holdings Ltd. v. Clarium Capital Mgmt., 622 F. Supp. 2d 825, 831 (N.D. Cal. 2007) ("[C]ourts have generally found there is a difference: arbitration is more likely to be attained when the party resisting arbitration is a signatory." (internal quotation marks omitted)).

opposing signatory to arbitrate.  They had no occasion to opine on whether "agency theory" may apply to compel a non-signatory agent to arbitrate.

The remaining cases cited by Defendant are also distinguishable, though for different reasons.  In <u>AHTNA Gov't Serv. v. 52 Rausch, LLC</u>, No. C 03-00130 SI, 2003 WL 403359 (N.D. Cal. Feb. 19, 2003), a contractor entered into various construction contracts with the defendant property owners, which contracts contained arbitration provisions.  Subsequently, the plaintiff and the contractor formed a joint venture for the purpose of "the proposal, negotiation, and performance of" these construction contracts.  <u>Id.</u> at *1.  The plaintiff, however, did not sign the construction contracts.  <u>Id.</u>  When a dispute arose between the joint venture and the defendant owners, the contractor sued the owners in state court, and the owners filed a counter-demand for arbitration, including against the plaintiff.  The plaintiff then brought suit in federal court to block the arbitration. <u>Id.</u> at *2.  The court concluded that the plaintiff was obligated to arbitrate under "[o]rdinary contract and agency principles."  <u>Id.</u> at *11.  Specifically, the court reasoned that because the plaintiff "acted and held itself out as a joint venturer in the construction contract, agreed to perform the terms of that contract, and received the benefits of that contract, [plaintiff] is bound by the acts of its partner VEI."  <u>Id.</u>; <u>see also</u> <u>id.</u> ("[Plaintiff], by its actions, bound itself to perform the contract's terms, and did perform the contract's terms.").  The court concluded that "[t]herefore, although [plaintiff] is a nonsignatory to the contract, the Court finds that it is bound to arbitrate its dispute."  <u>Id.</u>

Here, by contrast, there is no indication that Plaintiff was even aware of, much less intended to be bound by the Cruise Contract. Indeed, AHTNA highlights precisely the indicia of agency that is absent in this case: the Court has received no evidence that Plaintiff ever agreed – whether through a partnership agreement with Royal Caribbean or any other conduct – to perform the provisions of the Cruise Contract between Royal Carribean and Defendant.  Accordingly, there is no basis to conclude that Plaintiff agreed to be bound by Royal Caribbean's execution of the arbitration agreement.

Defendant next cites Ripmaster for the proposition that a non-signatory employee may be bound by his employer's agreement to arbitrate.  To be clear, however, the Ripmaster court held that the non-signatory employee was bound to arbitrate not because he was an agent of the signatory employer, but rather because he was a third-party beneficiary of the contract containing the arbitration provision – a separate theory which the Court addresses below.  Ripmaster, 824 F. Supp. at 117.  Thus, Ripmaster in no way implies that a non-signatory employee is bound to arbitrate his claims merely because his employer signed an arbitration agreement.

Finally, Defendant relies on various state law cases to support his position, none of which demand a different result.[5]  In Berman v. Dean Witter & Co., Inc., the court held that a non-signatory plaintiff was bound to arbitrate his claim against defendant brokers because his wife signed an arbitration agreement with them.  119 Cal. Rptr. 130, 133 (Ct. App. 1975).  Berman is distinguishable, however, because the

---

[5] Moreover, state law cases are non-binding because the question of arbitrability is a matter of federal law.  Letizia, 802 F.2d at 1187.

husband clearly agreed to be bound by the agreement when he purchased futures on margin through the brokers on behalf of his wife. <u>Id.</u> at 132. Here, as already explained, there is no sign that Plaintiff agreed to be bound by the Cruise Contract.

The Court is similarly unpersuaded by Defendant's reliance on two medical malpractice cases, <u>Bolanos v. Khalatian</u>, 283 Cal. Rptr. 209 (Ct. App. 1991), and <u>Mormile v. Sinclair</u>, 26 Cal. Rptr. 2d 725 (Ct. App. 1994). In each case, the court held that a patient-physician arbitration agreement compelled the patient's husband to arbitrate his claims for loss-of-consortium or emotional distress against the physician, even though the husband never signed the arbitration agreement. <u>Mormile</u>, 26 Cal. Rptr. 2d at 730; <u>Bolanos</u>, 283 Cal. Rptr. at 212. In reaching this decision, both courts relied ***not*** on any particular theory of agency, but rather on the specific precedent established in <u>Gross v. Recabaren</u>, 253 Cal. Rptr. 820 (Ct. App. 1988), which held that "where . . . a patient expressly contracts to submit to arbitration 'any dispute as to medical malpractice,' and that agreement fully complies with Code of Civil Procedure section 1295, it must be deemed to apply to all medical malpractice claims arising out of the services contracted for, regardless of whether they are asserted by the patient or a third party." <u>Id.</u> at 826.

More specifically, the holding in <u>Gross</u> stemmed from "an extensive discussion of policy, including that relating to the patient's right to privacy." <u>Mormile</u>, 26 Cal. Rptr. 2d at 727. In particular, the <u>Gross</u> court determined that enabling a patient to bind her spouse to arbitrate would be in the best interest of the patient's rights. The alternative would be untenable: if doctors were obliged to

obtain the spouse's concurrence to arbitrate all claims, this would not only compromise the patient's privacy, but also effectively give the spouse veto power over the procedure, undermining the patient's independence in deciding whether to undergo treatment. Id. at 729. Further, the Mormile court reasoned that "if a spouse with a loss of consortium claim were allowed to litigate that claim, the purpose of section 1295 would be defeated, for the patient would be compelled to arbitrate, but the physician would still have to answer in a civil suit." Id. at 730. For these reasons, California courts recognize that a "spouse/patient may bind the nonsignatory spouse to arbitrate claims arising from the care and treatment rendered by the physician." Id. at 728.

As the foregoing discussion illustrates, Bolanos and Mormile relied on unique practical concerns to conclude that, in the medical context, a patient must have authority to bind her spouse to an arbitration agreement. This case, by contrast, contains no comparable basis from which the Court could conclude that Royal Caribbean was authorized to bind Plaintiff to arbitrate his claims against Defendant.

The only case cited by Defendant that appears to contradict the Court's conclusion is Harris v. Super Ct., 233 Cal. Rptr. 186 (Ct. App. 1986). In Harris, the court held that a defendant physician could be compelled to arbitrate a claim against him, even though he did not sign the arbitration agreement between the plaintiff-patient and the hospital for which he was an employee. Id. at 188. The court reasoned that because the doctor was the hospital's agent, "he was subject to [the hospital's] obligations under the arbitration agreement." Id. If credited, this decision would appear to require Plaintiff to arbitrate

simply because he is an employee of Royal Carribean.

The Court declines to follow Harris for two reasons.  First, as mentioned above, the question of arbitrability is a matter of federal substantive law.  Chastain, 502 F. Supp. 2d at 1075.  No federal case has followed Harris, and in fact, Bel-Ray reached precisely the opposite conclusion.  Second, even if Harris reflected a correct application of agency law, it only held that a non-signatory **defendant** may be bound by his employer's arbitration agreement with the plaintiff.  Harris had no occasion to address whether a non-signatory plaintiff could be bound by his employer's arbitration agreement.  In the final analysis, Harris does not disturb the principle that if an agent is assaulted while he is conducting the affairs of the principal, or because of the agency relation, the "resulting cause of action belongs to him and to him only," and "this right is free from interference by the principal."  Restatement (Second) of Agency § 374(1) cmt 1.  In light of this rule, which is consistent with the weight of federal authority, the Court concludes that Defendant has failed to identify a credible principle of agency law that would suspend the general rule that a non-signatory is not bound by an arbitration clause.

### C.  Plaintiff Is Not A Third-Party Beneficiary to the Cruise Contract

Defendant alternatively argues that although Plaintiff is a non-signatory to the arbitration provision, he may be compelled to arbitrate because he is a third party beneficiary of the Cruise Contract.

The Ninth Circuit in Comer addressed the same argument that a non-signatory plaintiff was "bound by the arbitration clauses as a

third party beneficiary." 436 F.3d at 1102. As the court explained, "[t]o sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." Id. (citing Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 2000)). Further, "[a] promisor owes a duty of performance to any intended beneficiary of the promise, and 'the intended beneficiary may enforce the duty.' " Klamath, 204 F.3d at 1211 n.2 (citing Restatement (Second) of Contracts § 304 (1979)). An intended beneficiary must "fall within a class clearly intended by the parties to benefit from the contract." Id. "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." Id.

Here, as in Comer, Defendant has not produced any evidence that the signatories to the Cruise Contract intended to give Plaintiff the right to sue under the Cruise Contract. "It follows that [Plaintiff] cannot be bound to the terms of a contract he didn't sign and is not even entitled to enforce. A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to." Comer, 436 F.3d at 1102 (emphasis in original).

Moreover, there is no evidence that Royal Carribean and Defendant entered the Cruise Contract with the express or implied intent to benefit Plaintiff. Defendant claims that the Contract benefits the Plaintiff because (1) the Contract must be entered before a passenger may board the ship, so the Contract "makes it possible" for Plaintiff

to earn tips from passengers; (2) the Contract protects Plaintiff by requiring passengers to follow certain rules aboard the ship; (3) the Contract protects Plaintiff by setting time and notice limitations on lawsuits brought by passengers. (Mot. at 17). It is clear, however, that these rules are meant to protect Royal Caribbean from liability, and any indirect benefit to Plaintiff is incidental. Accordingly, Defendant's argument lacks force.[6] Therefore, the Court concludes that the Cruise Contract does not provide a basis to compel Plaintiff to arbitrate his claims.

### D. Plaintiff Is Not Equitably Estopped From Bringing Suit

Defendant argues in the alternative that Plaintiff must be compelled to arbitrate pursuant to his Employment Agreement. More precisely, Defendant contends that Plaintiff should be equitably estopped from refusing to arbitrate the instant claims because they are factually interwoven with Plaintiff's separate claims against Royal Caribbean, which are subject to arbitration pursuant to Plaintiff's Employment Agreement. Thus, in this context, the shoe is on the other foot: Plaintiff is the signatory to his own Employment Agreement, whereas Defendant is the non-signatory seeking to compel arbitration.

#### 1. Equitable Estoppel Standard

Federal courts within and beyond this Circuit have recognized that a non-signatory may compel a signatory to arbitrate pursuant to two

---

[6] Because the Court concludes that the Cruise Contract's arbitration provision does not apply to Plaintiff in the first place, the Court need not address the parties' arguments concerning the proper construction of the arbitration clause in the Cruise Contract.

theories of equitable estoppel.[7]

> First, equitable estoppel applies when the
> signatory to a written agreement containing an
> arbitration clause must rely on the terms of the
> written agreement in asserting its claims against
> the nonsignatory. When each of a signatory's claims
> against a nonsignatory makes reference to or
> presumes the existence of the written agreement,
> the signatory's claims arise out of and relate
> directly to the written agreement, and arbitration
> is appropriate.

Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp., No. 04-3126 MHP,

2004 WL 2645974, at *5 (N.D. Cal. 2004) (citing MS Dealer Serv. Corp.

v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)) (internal quotation

marks omitted); see also Sokol Holdings, Inc. v. BMB Munai, Inc., 542

F.3d 354, 358 (2d Cir. 2008) (applying first prong); Brantley v.

Republic Mortg. Ins. Co., 424 F.3d 392, 395-96 (4th Cir. 2005) (same);

Grigson, 210 F.3d at 527 (same).  The rule exists because a signatory

to an agreement "cannot on the one hand, seek to hold the non-signatory

liable pursuant to duties imposed by the agreement, which contains an

arbitration provision, but on the other hand, deny the arbitration

provision's applicability because the defendant is a non-signatory."

Hawkins v. KPMG LLP, 423 F. Supp. 1038, 1050 (N.D. Cal. 2006) (internal

quotation marks omitted).

> Second, application of equitable estoppel is
> warranted when the signatory to the contract
> containing an arbitration clause raises allegations
> of substantially interdependent and concerted
> misconduct by both the nonsignatory and one or more
> of the signatories to the contract. Otherwise the
> arbitration proceedings between the two signatories
> would be rendered meaningless and the federal
> policy in favor of arbitration effectively
> thwarted.

---

[7] Whether to utilize equitable estoppel is within the district court's
discretion.  Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524,
528 (5th Cir. 2000).

_Fujian_, 2004 WL 2645974, at *5 (citing _MS Dealer_)(internal quotation marks omitted); _see also_ _Westmoreland v. Sadoux_, 299 F.3d 462, 467 (5th Cir. 2002) (applying second prong); _Brantley_, 424 F.3d at 396 (same); _Chastain_, 502 F. Supp. 2d at 1077 (same).  The rationale of this prong is to prevent instances where an unnamed signatory "in essence, becomes a party, with resulting loss, _inter alia_, of time and money because of its required participation in the proceeding," even though it had agreed with the plaintiff signatory to arbitrate their disputes. _Grigson_, 210 F.3d at 528.  "In other words, where a lawsuit against non-signatories is inherently bound up with claims against a signatory, the court should compel arbitration in order to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration." _Hawkins_, 423 F. Supp. 2d at 1050.

### 2.  Analysis

Here, Defendant invokes the second theory of estoppel, arguing that Plaintiff has alleged substantially interdependent and concerted misconduct by the nonsignatory Defendant and signatory Royal Caribbean. (Mot. at 18-19).

However, in comparing the respective allegations against Royal Carribean and Defendant, the Court does not perceive any substantially interdependent and concerted misconduct.  For the most part, Plaintiff's allegations against Royal Caribbean are not bound up with Defendant's alleged misbehavior.  Plaintiff seeks to hold Defendant liable for assault and battery, and the emotional distress resulting therefrom.  By contrast, Plaintiff asserts that Royal Carribean unlawfully confined Plaintiff to a room for five days after the

assault, constituting (1) false imprisonment; (2) intentional inflICTION of emotional distress; and (3) negligent infliction of emotional distress. (Rubin Decl., Ex. D ¶¶ 33-58). In addition, Plaintiff alleges that Royal Carribean failed to provide timely and adequate medical treatment and compensation. (Id. ¶¶ 59-72). Thus, the respective claims against Defendant and Royal Caribbean allege separate acts that occurred at different times. Further, there is no evidence that Defendant's assault and Royal Caribbean's subsequent response were interdependent or concerted – i.e., that the quality of Royal Caribbean's response was in any way influenced by Defendant.

The only respect in which the two defendants' conduct arguably were related stems from Plaintiff's allegation that Royal Caribbean negligently increased the risk of the alleged assault by (1) putting Plaintiff in harm's way despite its knowledge of Defendant's "propensities"; and (2) providing Defendant with large amounts of alcohol. (Id. ¶¶ 23-32). However, this argument fails to trigger equitable estoppel for three reasons.

First, the defendants' alleged misdeeds are not "substantially interdependent." Even accepting that Royal Caribbean's provision of alcohol may have increased the likelihood of Defendant's alleged conduct, this connection is neither substantial nor interdependent. First, the purported causal connection is not so substantial as to be material in this case. For example, it is highly unlikely that Royal Caribbean's conduct would provide an affirmative defense for Defendant at trial. Second, even if Royal Caribbean's alcohol may have contributed to Defendant's alleged behavior, there is no allegation of the converse, that Royal Caribbean's actions were influenced by

Defendant.   Thus, the allegations against the defendants are not *inter*dependent.

Second, the test for estoppel is conjunctive – i.e., it requires that Plaintiff allege substantially interdependent **and** concerted misconduct between the alleged malfeasants.  Even accepting that the defendants' conduct are related to some extent, the allegation that Royal Caribbean increased the chance of Defendant's misbehavior does not reflect substantially concerted misconduct.  "Concerted" action entails, at a minimum, some degree of agreement between the actors.  See Black's Law Dictionary 328 (9th ed. 2009).  For example, in MS Dealer, the plaintiff alleged that a service corporation "cooperated, conspired, and otherwise colluded" with a car dealership to defraud the plaintiff into purchasing a service contract along with her car.  177 F.3d at 944-45.  The plaintiff had signed an arbitration agreement with the dealership, but not the service corporation.  Id.  The court invoked equitable estoppel to compel the plaintiff to arbitrate her claims against the service corporation, on the ground that her claims against the service corporation and the dealership "are based on the same facts and are inherently inseparable."  Id. at 948; see also Orcutt v. Kettering Radiologists, Inc., 199 F. Supp. 2d 746, 752-53 (S.D. Ohio. 2002) (finding claims were interdependent and concerted where plaintiff sought to hold both defendants jointly and severally liable for all of the same conduct).  Such concerted effort is simply not present in this case.

Third, as alluded to above, the underlying purpose of the "concerted misconduct" test is to prevent the plaintiff from "artfully plead[ing] around an arbitration agreement simply by naming a

non-signatory defendant who acted in concert with the signatory."
Chastain, 502 F. Supp. 2d at 1081.  In that event, because of its
interest in the litigation, "the unnamed signatory, in essence, becomes
a party, with resulting loss, *inter alia*, of time and money because of
its required participation in the proceeding."  Id. (internal quotation
marks omitted).  At bottom, the rationale is to avoid denying the
signatory defendant the benefit of the arbitration clause.  Hawkins,
423 F. Supp. 2d at 1050.  However, that concern is considerably
attenuated here because, as Defendant concedes, Plaintiff and Royal
Caribbean are arbitrating their dispute.  (Mot. at 8-9).  Because Royal
Caribbean has not been denied the benefit of arbitration, the equitable
basis for estoppel appears to be absent here.

### 3.   Ninth Circuit's Recent Decision in Kramer

Although the parties do not raise the issue, the Court takes the
opportunity to clarify its holding in light of a recent opinion by the
Ninth Circuit, Kramer v. Toyota Motor Corp., No. 12-55050, 2013 DJDAR
1302 (9th Cir. Jan. 31, 2013).  Kramer is noteworthy because the court
applied California contract law, not federal law, to evaluate whether
the doctrine of equitable estoppel empowered the defendant
non-signatory to compel the plaintiff signatory to arbitrate.  Id. at
1305.  In adopting this approach, the court cited Arthur Andersen LLP
v. Carlisle, 556 U.S. 624, 630-32 (2009), for the proposition that a
non-signatory "may invoke arbitration under the FAA if the relevant
state contract law allows the litigant to enforce the agreement."
Kramer, 2013 DJDAR at 1305.

However, as the panel in Kramer suggested, id. at 1306 n.5, its
approach is in apparent tension with Mundi v. Union Sec. Life. Ins.

Co., 555 F.3d 1042, 1045-46 (9th Cir. 2009), where the Ninth Circuit relied on *federal* cases to define the equitable estoppel legal standard.  See also Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co., No. 10-55451, 2012 WL 689957, at *1 (9th Cir. Mar. 5, 2012) (noting difference between Mundi and Arthur Andersen).  The Court need not disentangle this confusion, however, because the outcome here would be no different even if the Court were to apply California contract law pursuant to Kramer.  California contract law holds as follows:

> In *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause.* In other words, allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement.

Goldman v. KPMG LLP, 92 Cal. Rptr. 3d 534, 541 (Ct. App. 2009) (emphasis in original).  Applying Kramer to this case, even if the respective allegations against Defendant and Royal Caribbean were substantially interdependent and concerted, which they are not, equitable estoppel still would not apply because the allegations of assault and battery against Defendant are not "inextricably bound up" with the terms of the Employment Agreement.  Goldman, 92 Cal. Rptr. 3d at 541.  Indeed, Defendant does not even attempt to pursue this argument.  (Mot. at 17).  Accordingly, Kramer does not alter the Court's conclusion that Plaintiff is not estopped from bringing this lawsuit.

**V.     CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration is DENIED.


IT IS SO ORDERED.

DATED:  February 1, 2013

_____

                              STEPHEN V. WILSON

                     UNITED STATES DISTRICT JUDGE